FRANK S. GRAY, Appellant, *v.* AUGUSTUS D. SHEPARD et al., as Executors of ELLIOTT F. SHEPARD, Deceased, Respondents.

1. WRITTEN CONTRACT — ORAL EVIDENCE. Oral evidence is not admissible to explain or limit the meaning of the word "incompatibility," when stated among the grounds for discharge provided in a written contract of employment.

2. MASTER AND SERVANT — CAUSE FOR DISCHARGE. The proprietor of a newspaper, defendant in an action for damages for the alleged wrongful discharge of the plaintiff from employment as manager of the paper, sought to justify the discharge on the ground, among others, of the plaintiff's refusal to deliver up a certain written memorandum, without date or signature, which the defendant had sent to the plaintiff, as his manager, in relation to endeavoring to obtain a contract for public printing. The plaintiff had told the defendant that he had destroyed the memorandum, but on differences arising between them it appeared that he had kept it, and he threatened the defendant that because of the memorandum he would not dare to discharge him. The trial judge charged that the plaintiff's refusal to deliver the memorandum to his employer was a breach of duty and good cause for his discharge. *Held*, that, in view of the circumstances, the charge was proper; that the memorandum was like any other order relating to current business, which, when it had served its purpose, belonged to the employer; that the plaintiff had no interest to protect in keeping it, and that consequently it did not come within the rule that an agent has the right to retain letters written to him by the master relating to his agency, which may be necessary for his protection.

3. MASTER AND SERVANT — RETENTION, AFTER BREACH OF DUTY. A master does not, by retaining a servant in his employ after knowledge of breaches of duty, condone the offenses and prevent their use thereafter as grounds of discharge, where the breaches were committed from time to time, continuing until the discharge.

Reported below, 79 Hun, 467.

(Argued June 10, 1895; decided October 8, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made August 7, 1894, which affirmed a judgment in favor of the original defendant, Elliott F. Shepard, entered upon a verdict, and also approved an order denying plaintiff's motion for a new trial.

The original defendant died while the appeal to the General Term was pending, and his executors were thereupon substituted in his stead.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. J. Dittenhoefer* and *David Gerber* for appellant. The learned trial judge erred in charging that the defendant had the right to demand the letter of July, 1888, and that plaintiff's refusal to return it was necessarily a breach of the agreement between them. (*Hemmens* v. *Nelson*, 138 N. Y. 527; *Whetmore* v. *Scovell*, 3 Edw. Ch. 515; *Donohue* v. *Henry*, 4 E. D. Smith, 162; *In re Wheatcraft*, L. R. [6 Ch. Div.] 97; *In re Thomson*, 20 Beav. 545.) Even if a servant may be dismissed from service for refusing to surrender a letter he receives from his master, the rule has no application to this case for the reason that the defendant retained the plaintiff in his employment for about a year after his refusal to give up the letter. (Wood on Master & Serv. § 123.) The court erred in excluding plaintiff's evidence as to what was said by the defendant about the meaning of the word "incompatibility" at the time of the signing of the contract. (*Buckstaff* v. *Russell*, 151 U. S. 626; *Dodge* v. *Zimmer*, 110 N. Y. 43; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464; *Smith* v. *Clews*, 114 N. Y. 190; *Newhall* v. *Appleton*, 114 N. Y. 140; *B. & S. Co.* v. *S. R. P. & P. Co.*, 16 N. Y. Supp. 657; *McShane Co.* v. *Padian*, 1 Misc. Rep. 332; *Gray* v. *Harper*, 1 Story, 574.)

*Noah Davis* and *A. L. Pincoffs* for respondents. It was entirely competent and lawful for the parties to make the agreement they did in respect to the right and power of Mr. Shepard to discharge the plaintiff and annul the contract for any dishonesty, incompetency, incompatibility or breach of the agreement of or by Mr. Gray. (*Glenny* v. *Lacy*, 1 N. Y. Supp. 513; *Gray* v. *R. R. Co.*, 11 Hun, 70; *McCarren* v. *McNulty*, 7 Gray, 139.) There was no error whatever in any of the rulings of the court as to the admission or rejec-

tion of any of the testimony offered or taken in the case.
(*Hollender* v. *Dinsmore*, 55 N. Y. 200 ; *Mittnacht* v. *Slevin*,
67 Hun, 17 ; *Smith* v. *Clews*, 114 N. Y. 190.) Where
the judgment has ample proof to support it, it should not
be reversed, even if some slight error appears in the admis-
sion of testimony. (*McGean* v. *M. R. Co.*, 117 N. Y. 219 ;
*Forest* v. *Forest*, 25 N. Y. 510; *People* v. *Gonzalez*, 35
N. Y. 59 ; *Tenney* v. *Berger*, 93 N. Y. 524; *Ottinger* v.
*N. Y. E. R. R. Co.*, 17 N. Y. Supp. 912.) The position
of the appellant as to the question of the title or owner-
ship of such a communication by a master to his servant
engaged in such an employment and relation as existed in
this case, is not correct in law and should not be sus-
tained by the court. (*Hopkinson* v. *Burghley*, L. R. [2 Ch.]
264; *Greigsby* v. *Breckenbridge*, 2 Bush [Ky.], 484.) The
court was right in saying that, if the jury found the facts to be
true, such conduct was a breach of the contract. (*Forsyth* v.
*McKinney*, 56 Hun, 1; Wood on Master & Servant, 238 ;
*Atkin* v. *Acton*, 4 C. & P. 208 ; *Smith* v. *Thompson*, 8 C. B.
52; *Matthews* v. *Park*, 146 Penn. St. 384; *Deane* v. *Cutler*,
20 N. Y. Supp. 617; *Arkush* v. *Hanan*, 60 Hun, 518.)
The point on the part of the appellant, to the effect that even
if defendant could have discharged the plaintiff for refusing
to give up the letter, the offense was condoned by continuing
him in his employment for about a year after his refusal to
give it up, has no substantial foundation. (2 Rumsey's Pr.
316 ; *Springsteed* v. *Lawson*, 14 Abb. Pr. 328.)

ANDREWS, Ch. J.   This action was brought to recover dam-
ages alleged to have been sustained by the plaintiff in conse-
quence of his wrongful discharge by the original defendant
Shepard from his employment on the "Mail and Express," a
newspaper in the city of New York. The employment was
under a written contract dated April 18, 1888. By the con-
tract the plaintiff undertook to devote his whole time (Sun-
days excepted), and all his energies and talents, "to pushing
the publication, subscription, circulation, advertising, influence

and all the interests of said newspaper, and in every method he may devise, or be advised or directed, to be approved by Mr. Shepard, and in no way against Mr. Shepard or his successor's interest." The contract was to continue for five years, and the plaintiff was to receive as compensation for his services six thousand dollars a year, and in addition, during each of the last three years, was to be credited five thousand dollars towards the purchase of an interest in the paper. The contract provided that "for any dishonesty, incapacity, incompatibility or breach of the agreement" on the part of the plaintiff Mr. Shepard should be at liberty to annul and cancel it. On the 4th day of January, 1890, Mr. Shepard notified the plaintiff, in writing, that under the option in the contract he annulled it for the plaintiff's "dishonesty, incapacity, incompatibility and breaches of the agreement." The answer alleged that the discharge was justified by the conduct of the plaintiff, his unfaithfulness, dishonesty and incompetency, and because his habits and manners were such as to produce incompatibility between him and the employer and other persons connected with the business. The jury rendered a verdict for the defendant, and the only questions before us arise on exceptions taken upon the trial.

The plaintiff offered to prove a conversation between himself and Mr. Shepard when the contract was presented to him and before its execution, in which Mr. Shepard, in reply to an inquiry made by the plaintiff as to the meaning of the word "incompatibility" in the contract, said that "it meant that he should have the right to discharge you if at any time you were unsuited to newspaper work, or tired of newspaper work, and that is all it meant." The judge excluded the evidence and the plaintiff excepted. The ruling was proper. The plaintiff, by the evidence offered, sought to limit the meaning of a word in common use, the only indefiniteness of meaning consisting in its wide application, and which for that very reason, as may be inferred, was introduced into the contract. The elements and qualities which may create incompatibility between persons elude exact definition, so varied are the cir-

cumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character. It must be assumed that the parties understood the wide signification of the word and used it understandingly. The service to be rendered involved mutual confidence between the parties and intimate personal association. Want of harmony between them for any cause would be likely to interfere with the newspaper enterprise and made the insertion of this ground for discharge natural and reasonable. The word is not a word of art, or of technical or local meaning, or having two distinct meanings, circumstances which have been held to justify parol evidence of the meaning of a word used in a written contract. (Green. on Ev. § 295.) The largeness of the meaning of the term used in the contract is no reason for limiting its interpretation, nor does it furnish any reason for permitting parol evidence in explanation. Whether there was incompatibility which justified the discharge was a question for the jury upon the evidence. The employer could not allege incompatibility as a pretense for discharging the plaintiff. The incompatibility must have existed in fact to justify a discharge under this term of the contract.

The defendant, among other things, sought to justify the discharge of the plaintiff by reason of his conduct in respect to a memorandum sent by him from Bar Harbor July 28, 1888, and one of the exceptions relied upon by the plaintiff is to the charge of the judge upon that subject. On the 28th of July, 1888, the defendant being at Bar Harbor, sent by mail to the plaintiff in New York a pencil memorandum without date or signature, relating to the subject of procuring for the "Mail and Express" certain public printing which was controlled by the police commissioners of the city of New York. The memorandum was inclosed in a letter envelope with the defendant's check for $5,000, payable to the order of the plaintiff. The memorandum referred to the subject of commissions to be paid for the printing contract. The printing was given to some other paper. In August, 1888, the defendant having returned from Bar Harbor, asked the plaintiff for the check and

memorandum.    The plaintiff returned the money but told the
defendant he had destroyed the memorandum.    Subsequently
differences arose between the parties, and the defendant desired
to dissolve the relation between them.    The defendant testi-
fied in substance that when these later differences arose, the
plaintiff threatened that the defendant would not dare to dis-
charge him because of the memorandum, which he then said
he had not destroyed, and he refused on request of the defend-
ant to give it to him.    In fact the plaintiff had not destroyed
the memorandum and it was produced on the trial.    He testi-
fied: "I have kept it all the time in the safe deposit vault of
the National Park Bank."    It was claimed on the part of the
plaintiff that the check of $5,000 was sent to be used to influ-
ence the police commissioners to award the printing contract
to the "Mail and Express," and that the memorandum con-
firmed this view.    The defendant on the trial denied under
oath that the check was sent for the purpose claimed, and
explained the allusions in the memorandum consistently with
an honest purpose.    The jury found the version of the transac-
tion given by him and were authorized to find that the plain-
tiff preserved the memorandum, to be used as a means of
coercing the defendant to retain him in his employment.    It
appeared that it was the custom of the defendant to give
directions to his employees by informal written memoranda
in pencil, without date or signature, in the same form as the
one in question.    The judge, in his charge to the jury, referr-
ing to the transaction alluded to, said: "According to Mr.
Gray's testimony, the paper was given to him by the defend-
ant as his manager.    Whatever its contents or whatever its
purpose, it was given in the course of his employment, and
the master would have the right afterwards to demand that or
any other paper which he had intrusted to his employee, and
he would have no right to refuse it.    That which the master
had a right to demand, if it shall be refused by the employee,
is necessarily a breach of the agreement existing between
them."    He further charged: "If you come to the con-
clusion that there was a breach of the contract with reference

to the matters I have submitted to you, I charge you as matter of law it is your duty to render a verdict for the defendant." The plaintiff's counsel excepted to the charge in the following language: "I except to that portion of the charge where the court said in substance that the master would have a right to demand from the servant the return of the letter concerning the advertisement sought to be procured from the police department for the "Mail and Express," and that what the master has the right to demand, which shall be refused, is necessarily a breach of the contract of service." It will be observed that no question was made as to the correctness of the assumptions of fact in the charge that the memorandum was given by the defendant to the plaintiff as the manager, and that it was a paper intrusted to the plaintiff by his employer. The plaintiff seeks to apply to the case the rule that an agent has the right to retain letters written to him by the master relating to his agency, which may be necessary for his protection. The case in question does not come within the rule. The memorandum was like any other order relating to the current business, which, when it had served its purpose, belonged to the defendant. The plaintiff had no interest to protect in keeping it. He had returned the money, and that was an end of his responsibility. He made no claim that the retention of the memorandum was necessary for any laudable or honest purpose. On the contrary, he informed the defendant at the first interview that he had destroyed it. We think the judge correctly charged, in view of the circumstances, that the plaintiff's refusal to deliver the memorandum to the defendant was a breach of duty and was good cause for his discharge.

The claim that the defendant, by retaining the plaintiff in his employment after knowledge of violations of duty, thereby condoned these offenses, and that they could not thereafter be used as grounds for discharge, is without force in view of the fact that his violations were committed from time to time, continuing until the discharge. The master may overlook breaches of duty in the servant, hoping for reformation; but, if he is

disappointed and the servant continues his course of unfaithfulness, he may act, in view of his whole course of conduct, in determining whether the contract of employment should be terminated.

We find no error in the record, and the judgment should be affirmed.

All concur.

Judgment affirmed.