Rafael A. Blanes, Petitioner, v. District Court of San Juan, Hon. Emilio S. Belaval, Judge, Respondent; Miriam Rodríguez de Álvarez et al., Interveners.

No. 1758.    Argued June 1, 1948.—Decided July 9, 1948.

*Guillermo Silva* and *Brown, Newsom & Córdova* for petitioner. *Vicente Géigel Polanco,* for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

We issued the writ of certiorari in this case to review the judgment rendered by the District Court of San Juan granting the complaint filed by Miriam Rodríguez de Álvarez against Dr. Rafael A. Blanes claiming a month's salary for having been discharged, without just cause, from her employment as X–Ray technician.

In the complaint filed in the Municipal Court of San Juan it was alleged that the plaintiff was working for the defendant under a verbal contract from September 7, 1945 until October 14, 1946 at an agreed monthly salary of $100 and that said contract was without a fixed time or term of duration; that she complied with all the duties of her employment until the last mentioned date when the defendant, without just cause or justifiable reason discharged her without first paying her the amount of $100 due her.[1]

The defendant in his answer accepted that he employed the plaintiff as set forth in the complaint but denied that she complied with all the duties of her employment and on the contrary alleged that the plaintiff was negligent in the per-

---

[1] Section 1 of Act No. 43 of April 28 of 1930, as amended by Act No. 84 of May 12, 1943 (Sess. Laws, p. 196) provides: "Every employee of an industry or other lucrative business whose services are contracted for without a definite term, who is discharged without just cause, shall be entitled to receive as indemnity from his employer, in addition to such salary as he may have earned, one month's salary; *Provided,* That the provisions of this Act shall not be applicable to commercial shop-clerks or factors, to whom the provisions of the Code of Commerce shall apply."

formance of her duties, doing her work inefficiently, disregarding office hours and conducting herself without the due respect and propriety towards her employer.[2]

The municipal court dismissed the complaint and on appeal the lower court granted it, stating in part as follows:

"The negligence of the employee consisted not in the lack of skill in taking the X-ray photographs which her employer asked her to do, but that sometimes—evidence was offered by the employer as to six X-ray photographs—the plaintiff did not mark the side of the plate on which she took the photograph. The employer himself admits that his employee was competent although he considered that this negligence was inexcusable. . . Sometime ago we decided the case of *Rolando Olivieri* v. *Puerto Rico Cap & Tire Sales Corporation,* civil number 476 of this court, decided on July 16, 1947 where we frankly reached the conclusion, so long as the Supreme Court of Puerto Rico does not hold otherwise, that following the rule of the Spanish Courts we would only acknowledge as just cause for the discharge of a workman those enumerated in Section 300 of the Spanish Code of Commerce, equivalent to Section 218 of our Code of Commerce, that is (1) Fraud or breach of trust in the business intrusted to them, (2) The transaction of some commercial business for their own account in competition with the business of his employer, (3) Gross disrespect and lack of consideration for the principal or members of his family or establishment. May be we would feel inclined, under other circumstances which would clearly show a manifest violation of the terms of the contract of the work to be performed, to enlarge these grounds for discharge as to include other causes. But, undoubtedly, the evidence offered in this case does not lead us to consider that *there exists the negligence justifying the discharge of plaintiff.* The fact that she was employed for a period of about one year with the employer shows *that notwithstanding the trivial mistakes in the performance of her work, the employer consented to continue with his employee's services, that is, there was a condonation of any misbehavior on the part of the employee.*" (Italics ours.)

[2] Of these two grounds for discharge, the only one under review herein is the negligence of the plaintiff in the performance of her work and whether said negligence was condoned by the employer.

■ The judgment in *Olivieri* v. *Puerto Rico Cap & Tire Sales Corporation*, referred to by the lower court was set aside by this Court on March 15, 1948 by certiorari, No. 1728, in *Puerto Rico Cap & Tire Sales Corporation* v. *District Court*, 68 P.R.R. 370, 374, and we held therein ". . . it is incumbent on the courts, after taking into consideration the facts and special circumstances of each case, to determine whether the discharge of the workman was well founded or whether it was arbitrary or unjustifiable."

■ We have carefully read the evidence introduced in this case and we are of the opinion that the lower court erred, as a question of law, in deciding that there did not exist the ground of negligence to justify the discharge of the plaintiff because the "mistakes" were "trivial in the performance of her work, and the employer consented to continue with his employee's services, that is, there was a condonation of any misbehavior on the part of the employee."

That the employee repeatedly acted negligently is clearly shown by the evidence and the court so admits in its findings. On October, 1946 was not the only time that plaintiff was dismissed by Dr. Blanes. On May, 1946 she was dismissed for the first time. Upon explaining the reason petitioner testified as follows:

"Q. Did Mrs. Rodríguez work uninterruptedly with you?
A. No, she was dismissed for the first time in May, 1946.
Q. For what reason?
A. Mrs. Álvarez, at that time Miss Rodríguez, shortly after coming to my office revealed that her character was incompatible with the rest of the personnel and it developed gradually . . . and showed that she was inefficient in the performance of her duties. For example, on several occasions in taking an X-ray photograph she either failed to mark the plate or mistakenly marked the right side for the left side. Sometimes I could prove this, I verified it in the X-ray room, when she placed the small plate I realized that she made the mistake in the photographs taken. For example there are some anatomical regions in the body which makes it easy to identify the right or left side. In those cases I could verify that she was

mistaken in taking the X-ray photograph and marking it and I called her attention on numerous occasions. This meant that I had to call the patient again to take new X-rays or that I had to take more photographs than those needed due to her mistake.

Q. And in the month of May, 1946 specifically why did you dismiss her?

A. I specifically discharged her on that occasion. I remember that on one afternoon she took an X-ray photograph of the skull. Next day when my Secretary brought me the X-ray photograph to be read I found that she had not marked the right nor the left side. It is entirely impossible to identify in a photograph of the skull the right or the left side. On that day she did not come to work. She was absent and did not come on the next day either. She gave me no excuse and then I wrote her a letter dismissing her and paid her work up to that day."

Petitioner further testified that at the request of the plaintiff and her mother, ten or twelve days after she had been discharged he again employed her because of the scarcity of X-ray technicians and he decided to give her another opportunity, but that although her work was good because the photographs which she took were very good, it was because of "her carelessness and irresponsible attitude in her work, in such a delicate work as this, that I felt compelled to dismiss her. . .", and then he proceeded to explain the mistakes committed by the plaintiff in marking the X-rays plates which compelled him to take new photographs which represented a loss to him; that every time it happened he called her attention; that besides the specific cases which he took to the court there were others; that although the section that is to be photographed appears from the card of the patient there are cases where it is impossible to identify the section or side photographed if the plate is not marked.

We do not agree with the lower court in that "notwithstanding the trivial mistakes in the performance of her work, the employer consented to continue with his employee's services, that is, there was a condonation of any misbehavior on

the part of the employee." The evidence showed that the petitioner had to dismiss his employee in May and that he again employed her a few days later. In doing so we accept that there was a condonation of the negligent acts previously committed by his employee. This does not mean, however, that after other acts of negligence were proven subsequent to the day of her re-employment, the employer was estopped to dismiss her because of the previous condonation and that said dismissal was without justifiable cause.

It is a well-settled rule that the negligence or incompetency in the performance of a work or employment is sufficient cause for the discharge of the employee even if the contract is for a fixed term. See the annotation on "Negligence or incompetency as a ground for discharge of an employee" in 49 A.L.R. 472. It is also a settled rule that the waiver or condonation by the employer of the negligent conduct of the employee may be an estoppel for the discharge of the latter for the prior conduct if in the future the employee does not repeat said acts. Nevertheless, this waiver or condonation is conditioned on the fact that the offense shall not be repeated. In *Hill Cattle Corporation* v. *Killorn*, 256 P. 497 (Mont. 1927), the doctrine was thus established:

"Condonation of prior breaches of a contract is always with the implied condition of future good conduct in compliance with the terms of the contract (authorities), and the fact that an employee is retained after the commission of a breach of his contract of employment will not prevent the master from using it as a ground for discharge, if the offense is repeated. (Authorities.)"

To that same effect see *Gordon* v. *Dickinson*, 130 S. E. 650 (W. Va. 1925); 44 A.L.R. 526; *Gray* v. *Shapard*, 147 N. Y. 177, 41 N. E. 500 and 35 Am. Jur., 481, § 50.

In every employment contract there exists either expressly or impliedly the condition that the employee shall comply with the duties of his work competently, and con-

sequently, if it is shown that the employee is incompetent, inefficient or negligent in such a manner that to continue with his services would be to the prejudice of the employer or even of third persons, this fact constitutes just cause for the dismissal. See the cases cited in the Annotation of 49 A.L.R. 473.

As we said in *Puerto Rico Cap & Tire Sales Corporation* v. *District Court, supra:* "The obligation to indemnify a workman who has been discharged . . . is not an absolute one. That obligation arises where he is arbitrarily or unnecessarily discharged without any just cause, reason or ground justifying the employer in dispensing with the services of the workman." The continuous and persistent negligence of the plaintiff in such an important aspect of her duties, as the proper identification of X–ray photographs taken by her undoubtedly is, since her failure to mark them correctly meant a loss of time and money to take them again in order to avoid the possibility of a mistaken diagnosis, constituted a just cause for her discharge. The fact that the record or card of the patient had to indicate the nature of the X–ray photograph that was to be taken, does not sufficiently cure her mistake in marking the plates for, as petitioner explains, there were times when the section or side of the body that had been photographed could not be identified from the plate itself.

Intervener argues that certiorari does not lie herein because no question of procedure or jurisdiction is involved and that it has been used in order to review the evidence. We have held in *Pérez* v. *District Court, ante,* page 4, that "This Court has the discretionary power to issue writs of certiorari to correct errors of inferior courts regardless of the nature of the error alleged." Furthermore, as we said in that same case, the review of a case of this nature is authorized under § 12 of Act No. 10 of 1917 as amended by Act No. 17 of April 11, 1945.

The judgment is reversed and another rendered dismissing the complaint without costs.[3]

Mr. Chief Justice Travieso and Mr. Justice De Jesús did not participate herein.

[3] Section 14 of Act No. 10 of 1917 amended by Act No. 17 of 1945, provides that: "No costs shall accrue in this class of suits."