ANNUNZIATA, Judge.
Husband, John F. Wilson, and wife, Georgia Anne Wilson, were divorced by final decree entered in March 1991. Husband appeals the trial court’s decision to enter a Qualified Domestic Relations Order (QDRO) amending the final decree of divorce. He appeals a separate order requiring him to pay past due child support and argues that he should be granted restitution for amounts he overpaid. Husband further contends that the trial court erred (1) in finding that it had jurisdiction to hear wife’s petition for an award of attorney’s fees incurred on a previous appeal to this Court; and (2) in requiring him to verify to the court his income for the years 1992 through 1994. For the reasons set forth below, we affirm in part and reverse in part.
I. ENTRY OF QDRO
The final decree of divorce entered in March 1991 provided, in part:
[Husband] will pay thirty percent (30%) of the marital share of his Federal Reserve pension each month if, as and when *755 he begins receiving the pension. Marital share is defined as that portion of the total interest, the right to which was earned during the marriage and before the last separation and is represented by the fraction having a numerator of 16 (representing the years during the marriage which [husband’s] service was credited toward his pension) and a denominator (T), presently unascertained, to reflect the total number of years to be credited towards [husband’s] retirement. The complete formula is .30 x 16/T x pension.
After the divorce, husband resigned from the Federal Reserve. The Qualified Domestic Relations Order (QDRO) outlined in the final decree did not qualify as a QDRO under federal law and, as such, did not effectuate the terms of the final decree with respect to husband’s pension. Accordingly, in December 1992, the trial court entered an order which provided, in part:
[T]he pension benefits awarded to [wife] in the Final Decree are her property in which she has sole ownership rights and as such she is entitled to designate beneficiaries. [Husband] is ordered to agree to the amendments to the Final Decree of Divorce necessary to have it qualify as a valid Qualified Domestic Relations Order (QDRO) in accordance with the requirements of the Federal Reserve and to promptly sign any documents which are necessary to effect same.
Pursuant to that order, wife presented a proposed QDRO for husband’s signature at the December 1992 hearing.
Subsection e of the proposed QDRO defined wife’s share of husband’s pension according to the formula set forth in the final decree. By handwritten amendment, however, the terms of subsection e were modified to provide that wife would receive “30% of any Federal Reserve pension as may be accrued from employment at the Federal Reserve Board in any period following December 1, 1992.” The handwritten amendments were initialled by husband, wife and wife’s attorney. The amended version of the QDRO was signed by both parties but was not dated, and it was not entered by the court. *756 Husband attached an objection to the amended QDRO, complaining of certain provisions unrelated to this appeal. No objection to the amendment of subsection e was attached.
A “clean” copy of the amended QDRO was never entered. On March 5, 1993, wife’s counsel submitted the amended QDRO under letter to the trial judge, requesting that the court enter it “in the interest of having a complete record.” Counsel stated that if she was later able to achieve a “clean, signed copy,” she would forward it to the court. Husband responded by letter, stating that he had intended to attach a statement of objections to the amended QDRO and that the signatures on the draft were “contingent on full implementation” of certain “adjustments” to be made on the “clean” copy. Husband also submitted an affidavit of his former counsel, which stated, in part, that wife’s attorney was supposed to have prepared a “clean” copy of the amended QDRO to which husband would have attached objections before signing and submitting the document to the court. Meanwhile, husband appealed the trial court’s December 1992 order requiring him to effectuate a QDRO which would comply with federal law. In that appeal, husband argued, inter alia, that the amended QDRO improperly provided wife an interest in his future pension payments. Because the proposed QDRO was “not signed and, thus, [was] not a part of the official record signed by the court,” this Court considered it a “nullity” and refused to rule on husband’s complaint. Wilson v. Wilson, 18 Va.App. 193, 198-99, 442 S.E.2d 694, 697 (1994).[1]
In February 1996, wife petitioned the trial court to compel husband to sign the amended QDRO. The record contains a typewritten version of the QDRO, which incorporated the handwritten amendments to subsection e described above. The trial court signed that version in March 1996, noting, “this typed order is a copy of another version with handwritten *757 parts and attached signatures.” Neither party signed that version of the QDRO.
The final, typewritten version of the QDRO from which this appeal arises, also incorporated the contested language providing that wife would receive “30% of any Federal Reserve pension as may be accrued from employment at the Federal Reserve Board in any period following December 1, 1992.” That version was signed by husband on February 29, 1996, and by husband’s attorney the following day.
At a June 1996 hearing for entry of the amended QDRO, the parties and the court agreed that the court had no authority to award wife a portion of husband’s pension benefits accruing after the parties’ divorce. However, wife’s counsel represented to the court the parties’ intention to modify the QDRO and argued that husband agreed to the inclusion of the provision at issue. Husband’s counsel represented to the court his understanding that husband had made no such agreement. He contended that he and husband had signed the final version of the QDRO on February 29, 1996, because he mistakenly believed that this Court had previously decided the issue.
The trial court took no evidence but found that the provision at issue was “a product of an agreement which included many interchangeable offers and acceptances.” The court, therefore, entered the final version of the QDRO the subject of this appeal, on June 14, 1996. Husband noted his objection to the language in subsection e which would effectuate a distribution of separate property; be also objected to the court’s “interpretation of this as an agreement that cannot be retracted.” The jurisdiction of the court to enter orders effectuating and enforcing its equitable distribution order entered pursuant to Code § 20-107.3 is limited. Equitable distribution orders become final within twenty-one days of entry. See Rule 1:1; see also Fahey v. Fahey, 24 Va.App. 254, 256, 481 S.E.2d 496, 497 (1997). Thereafter, the court’s power to modify such orders is governed by statute. Under Code § 20-107.3(K)(4), an equitable distribution order “intended to *758 affect or divide any pension or retirement benefits pursuant to ... federal laws ... [may be modified by subsequent order] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.” (Emphasis added). See Fahey, 24 Va.App. at 257, 481 S.E.2d at 497. Guided by the dictates of this statute, we find the trial court was without authority to substantively modify its original order equitably distributing husband’s pension benefits, irrespective of any agreement by the parties to the contrary.[2] The jurisdiction of the court cannot be established by consent. Rogers v. Damron, 23 Va.App. 708, 714, 479 S.E.2d 540, 541 (1997). We accordingly reverse the entry of the amended QDRO on June 14, 1996, and direct the trial court to decree distribution of the pension benefits pursuant to its original decree and consistent with this Court’s decision in Wilson v. Wilson, 18 Va.App. 193, 198-201, 442 S.E.2d 694, 697-99 (1994).
II. CHILD SUPPORT
The trial court’s December 1992 order required husband to pay wife $950 per month for the support of the parties’ minor child. The order directed that payment begin in August 1992 and “be payable directly to [wife] on the first of each month thereafter in accordance with Section 20-107.2.” At the time of the court’s order, Code § 20-107.2 read, in part:
[U]pon decreeing a divorce ... the court may make such further decree as it shall deem expedient concerning the custody____and support of the minor children of the parties____ The court may also order that support be paid for any child of the parties who is (i) a full-time high school student, (ii) not self-supporting and (in) living in the home of the parent seeking or receiving such child support until such *759 child reaches the age of nineteen or graduates from high school, whichever first occurs.
Husband stopped paying his child support obligation upon his child’s graduation from high school, approximately five months before her eighteenth birthday. Wife petitioned the court to order husband to pay support for the months prior to the child’s eighteenth birthday. Citing the fact that the child remained a minor until her eighteenth birthday, the court found that husband’s duty to support continued until that time and ordered husband to pay $5,100 in back child support.
Husband contends that his support obligation under the December 1992 order is governed by former. Code § 20-107.2 and that the court’s 1996 order was, in effect, an improper, retroactive modification of the 1992 order. This argument misconstrues the trial court’s finding. The trial court interpreted former Code § 20-107.2 and found husband’s support obligation did not terminate upon the child’s graduation from high school. In so finding, the court simply interpreted its prior order; it did not retroactively modify it. The issue we address, therefore, is whether the court properly interpreted former Code § 20-107.2. We find that it did.
Husband argues that former Code § 20-107.2 ‘Very plainly means that a support obligation terminates if a child graduates from high school prior to reaching age nineteen.” We agree, but only if that child is then eighteen years of age.
The provisions at issue must be construed in context with the statutory scheme providing for child support. Both parents are legally required by statute to support and maintain their minor children. Code §§ 20-61, 20-107.2, and 20-108.2; Commonwealth ex rel. Gray v. Johnson, 7 Va.App. 614, 622, 376 S.E.2d 787, 791 (1989). Former Code § 20-107.2 (now codified at § 20-124.2), granted the trial court discretion to order support for the minor children of the parties. In addition, under former Code § 20-107.2, the court could grant support “for any child of the parties who is (i) a full-time high school student, (ii) not self-supporting and (iii) living in the home of the parent seeking or receiving such child support *760 until such child reaches the age of nineteen or graduates from high school, whichever first occurs.” This latter provision extended the court’s authority to award support for minor children to allow it to award support for eighteen-year-old children still in high school, living at home, and not self-supporting.[3] That provision did not terminate the authority of the court to award support for minor children who had graduated from high school. Accordingly, the trial court’s order on this issue is affirmed.
III. RESTITUTION
Husband argues that this Court should grant him restitution of the child support he paid pursuant to the trial court’s order. In light of our decision with respect to husband’s continuing child support obligation, this issue is moot, and, in any event, the issue is without merit. Cf. Reid v. Reid, 245 Va. 409, 415, 429 S.E.2d 208, 211 (1993) (trial court has no statutory or inherent authority to order restitution of spousal support paid pursuant to erroneous order).
IV. FEES
Wife requested the trial court to award her attorney’s fees she incurred defending husband’s former appeal to this Court. On that appeal, we affirmed the trial court on all counts, and our mandate directed that husband pay to wife “damages according to law.” We subsequently denied husband’s petition for rehearing en banc, and the Supreme Court denied husband’s petition for appeal. The record contains no specific remand, from either this Court or the Supreme Court, with particularized instructions to the trial court to award attorney’s fees incurred on appeal. Accordingly, the trial court’s conclusion that it had jurisdiction to do so is erroneous and must be reversed. See O’Loughlin v. O’Loughlin, 23 Va.App. 690, 692-95, 479 S.E.2d 98, 99-100 (1996).
*761 V. VERIFICATION OF INCOME
Wife raised three issues in her pleadings giving rise to the June 1996 hearing: (1) attorney’s fees incurred defending husband’s prior appeal; (2) husband’s failure to sign the QDRO; and (3) husband’s termination of child support payments upon the child’s graduation from high school. At that hearing, wife’s counsel represented to the court her belief that husband had previously misrepresented to the court his income for the years 1992-1994. Counsel stated that she had issued a request for production of documents, seeking husband’s income tax returns, but that husband had refused to comply. Counsel requested that the court compel husband to verify his income for those years.
Husband’s counsel complained that he was “surprised” by wife’s request, but the court granted it. The court stated,
To the extent that a party in litigation isn’t 100 ... percent right, that’s not a problem. That’s in the realm of human variations, but to the extent that anybody had, in large dramatic differences, misled the process that we hope is a system of justice, then the system ought to have an alert review of that, and to the extent that this Court was told something untrue, I want to satisfy myself on that.
The court ordered husband to provide documentation of his income directly to the court at the subsequent hearing on wife’s request for appellate attorney’s fees. We hold that the trial court erred.
Relief of any type will only be granted when a party specifically requests the relief in a pleading filed in the proper court. It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed. “Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading.” “The office of pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied.”
*762 Hur v. DCSE ex rel. Klopp, 13 Va.App. 54, 62, 409 S.E.2d 454, 459 (1991) (citations omitted); see also Boyd v. Boyd, 2 Va.App. 16, 18-19, 340 S.E.2d 578, 580 (1986); Ted Lansing Supply Co. v. Royal Aluminum & Const. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229-30 (1981); Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935). In the absence of a pleading in the record placing the issue of husband’s income verification for the years 1992 through 1994 before the court, the court’s order that husband produce documents to verify his income must be reversed. See Hur, 13 Va.App. at 63, 409 S.E.2d at 459.

Affirmed in part, reversed in part, and remanded.

. This Court affirmed the procedural steps the trial court ordered to satisfy the requirements for a valid QDRO under federal law. Id. at 199-201, 442 S.E.2d at 697-99.

. Because we decide this issue on jurisdictional grounds, it is unnecessary to decide whether the parties had reached agreement to modify the order as wife contends.

. The present version of Code § 20-124.2(C) requires that support shall continue to be paid for any such child over the age of eighteen.