COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Clements and Retired Judge Hairston[*]
Argued at Salem, Virginia


JUDY LYNN HECK MONAHAN

                                    MEMORANDUM OPINION[**] BY
v.   Record No. 3047-00-3          JUDGE JEAN HARRISON CLEMENTS
                                         SEPTEMBER 11, 2001
LAWRENCE KEITH MONAHAN


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Clifford R. Weckstein, Judge

            Frank W. Rogers, III (Mundy, Rogers & Frith,
            LLP, on briefs), for appellant.

            Kenneth C. King, Jr. (King Higgs & Callahan,
            on brief), for appellee.


     Judy Lynn Heck Monahan (wife) appeals from an order entered

by the trial court on November 21, 2000, declining to award her a

portion of the monthly disposable Navy retirement benefits of

Lawrence Keith Monahan (husband). On appeal, wife contends the

trial court erred in construing the parties' postnuptial agreement

dated February 3, 1999, and the decree of divorce entered on April

9, 1999, incorporating the agreement, as an adjudication of all

_____

        [*] Retired Judge Samuel M. Hairston took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400.

        [**] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

equitable rights of the parties in their marital property. Finding no error, we affirm the decision of the trial court.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

The parties separated on August 15, 1994. Husband, an active member of the United States Navy, executed a Reserve Component Survivor Benefit Plan election certificate on October 31, 1995, providing a deferred annuity for wife and children. Husband had three options: no participation for the wife, an immediate annuity, or a deferred annuity. Husband had the further choice to base the annuity on full monthly retired pay or a reduced amount of monthly retired pay. In electing to provide wife the deferred annuity benefit, husband selected to base her level of coverage on his full monthly retired pay. On February 3, 1999, the parties entered into a handwritten mediation agreement, which was subsequently typed and executed. On February 22, 1999, the parties executed a postnuptial agreement which embodied the mediation agreement of February 3, 1999. In the decree of divorce entered on April 5, 1999, the trial court "ratified, confirmed, adopted, incorporated, approved and expressly made a part of [the] decree" the postnuptial and mediation agreements. The final sentence of the order provided that "this matter shall remain on

-

the Court docket for the purpose of entering a Qualified Domestic Relations Order."  Husband executed a second Reserve Component Survivor Benefit Plan on August 30, 1999, indicating wife's entitlement as former spouse.

On December 1, 1999, a dispute arose between the parties when wife demanded fifty percent of husband's monthly disposable Navy retirement benefits.  Wife filed motions seeking an award of a percentage of husband's monthly Navy retirement benefits as provided in the postnuptial agreement and seeking enforcement in equity of husband's contractual obligations pursuant to the agreement.

Paragraph 2 of the mediation agreement provided for an equal division of marital assets which were set forth in attached schedules.  These schedules included real, personal, and intangible property.  Paragraph 6 of the mediation agreement provided as follows:  "The wife shall be entitled to any statutory entitlement under the law for the Federal Navy Benefits."

The provision of the postnuptial agreement in controversy provided as follows:

> 2.7 <u>Retirement Accounts/Assets</u>.  As divided by the Mediation Agreement, each party agrees to waive all interests in any other real or personal property, 401K, Keogh, Thrift Savings plans, pension, retirement benefits, deferred compensation benefits, stocks, bonds, partnership interests or any other property whatsoever titled in the name of the other party.  The Husband is entitled to benefits under the Reserve Component Survivor Benefit Plan established by law for

-

> retired reservists of the United States
> Military and under which husband has selected
> option "B" for a deferred annuity, providing
> that his survivor may be entitled to an
> annuity upon the death of Husband, together
> with an identification card authorizing
> medical care, in accordance with the terms
> and conditions of the Reserve Component
> Survivor Benefit Plan.  The parties shall
> execute the Qualified Domestic Relations
> Order for wife's entitlement to any statutory
> entitlement of wife under law for the Federal
> Navy Benefits.

Wife argued to the trial court that the parties intended an equal division of marital property, of which husband's federal Navy benefits were a part.  The federal Navy benefits had two components, she asserted:  the survivor annuity benefit specifically mentioned in paragraph 2.7 of the postnuptial agreement and husband's monthly disposable retirement pay.  Wife argued that she was entitled to fifty percent of the retirement pay and that her entitlement to that pay was to be incorporated in the qualified domestic relations order provided for in paragraph 2.7 of the postnuptial agreement and reserved for entry by the trial court's order of April 5, 1999.  In the alternative, wife requested that the trial court enforce the parties' contractual agreements in equity and direct husband to endorse an order equally dividing the monthly disposable retirement pay as her contractual right.

Husband argued the agreement fully determined the equitable distribution rights of the parties.  Paragraph 2.7 of the postnuptial agreement, he asserted, specifically set forth the

-

Navy retirement benefits to which wife was entitled and the only jurisdiction reserved was for entry of the qualified domestic relations order.  The trial court, husband contended, no longer had jurisdiction to consider wife's request for further equitable distribution more than twenty-one days after entry of the final order adjudicating the rights of the parties.

The trial judge, in denying wife's motions, ruled:

> Approximately a year after the entry of that unappealed decree, Mrs. Monahan asks the Court to enter a decree (which she would call a Qualified Domestic Relations Order, or QDRO), which would add to the parties' contract executory provisions that parties did not make.  In the guise of interpretation, the trial judge would be making the parties speak words they never spoke, would be making a contract that they did not make.

This appeal followed.

On appeal, wife contends the trial court erred in ruling that the parties' postnuptial agreement did not provide her an entitlement to husband's monthly disposable Navy retirement benefits.

"Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts."  Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997).  Contract provisions are not ambiguous "merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement."  Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398

-

(1984).  Whether a contract provision is ambiguous is a matter of law, not of fact.  Id.  "Thus, we are not bound by the trial court's conclusions on this issue, and we are permitted the same opportunity as the trial court to consider the contract provisions."  Tuomala v. Regent University, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them.  The question for the court is what did the parties agree to as evidenced by their contract.  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson, 227 Va. at 187, 313 S.E.2d at 398 (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).  "A corollary to the last stated principle is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein."  Id.

Here, paragraph 2 of the mediation agreement provided for an equal division of those marital properties set forth in the attached schedules.  The schedules included real, personal, and intangible property.  In paragraph 6 of the mediation agreement, the parties recognized wife was entitled to Navy benefits without specifying what those benefits were or what her proportional entitlement would be.

-

In the postnuptial agreement, which incorporated the mediation agreement, the provisions for division of the parties' property were set forth in separate, identified paragraphs. Paragraph 2.7, entitled "<u>Retirement Accounts/Assets</u>," provided that, "[a]s divided by the Mediation Agreement, each party agrees to waive all interests in any other . . . retirement benefits." It then provided that husband was entitled to benefits under the Reserve Component Survivor Benefit Plan and that, under that plan, wife was entitled to medical care benefits and a deferred annuity benefit based on husband's full monthly retired pay. The final sentence of paragraph 2.7 obligated the parties to execute "<u>the</u> Qualified Domestic Relations Order" for wife's entitlement to the Navy benefits. (Emphasis added). In addition to the waiver of all interests in other retirement benefits set forth in paragraph 2.7, other paragraphs of the postnuptial agreement stated that all matters in dispute had been settled with a mutual release of claim to other marital property.

We conclude, therefore, that the contract is not ambiguous. The problem here is not that there was uncertainty as to the language by which the parties expressed their agreement. Rather, "the uncertainty sprang from their difference of opinion as to the meaning of the provision." See <u>Manss-Owens Co. v. Owens & Son</u>, 129 Va. 183, 197, 105 S.E. 543, 547 (1921). To rule as wife has requested would add to the meaning of the words

-

already contained in the contract and take away from the meaning of the words of the contract construed from its four corners as written. We hold the trial court did not err in its interpretation of the parties' postnuptial agreement and that the agreement, incorporated in the divorce decree, was an adjudication of all equitable rights of the parties in their marital property, including wife's entitlement to husband's Navy retirement benefits.

Finally, we note that the trial court's decree of divorce merely reserved jurisdiction to enter a qualified domestic relations order to effectuate wife's benefit provided in the postnuptial agreement and incorporated in the final decree, as permitted in Code § 20-107.3(K)(4). "Equitable distribution orders become final within twenty-one days of entry." Wilson v. Wilson, 25 Va. App. 752, 757, 492 S.E.2d 495, 497-98 (1997); see Rule 1:1. Code § 20-107.3(K)(4) permits modification of a final order by subsequent order only to establish or maintain the final order as a qualified domestic relations order or to achieve the expressed intent of the final order. See Fahey v. Fahey, 24 Va. App. 254, 257, 481 S.E.2d 496, 497 (1997). Thus, we hold the trial court was without authority to substantively modify the original order equitably distributing husband's Navy benefits, even if the parties had agreed to do so subsequently.

-

"The jurisdiction of the court cannot be established by consent."  <u>Wilson</u>, 25 Va. App. at 758, 492 S.E.2d at 498.

Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>