COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Malveaux and Causey
Argued at Salem, Virginia

CLAY CHASTAIN

MEMORANDUM OPINION* BY
v.        Record No. 0233-22-3                JUDGE MARY BENNETT MALVEAUX
DECEMBER 6, 2022

BEDFORD REGIONAL WATER AUTHORITY

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Clay Chastain, *pro se*.

W. Watts Burks, IV (Glenn Feldmann Darby & Goodlatte, on brief),
for appellee.

Clay Chastain ("Chastain") appeals from an order of the circuit court dismissing his petition

challenging the water and sewer connection fees required by the Bedford Regional Water Authority

("BRWA"). For the following reasons, we affirm the judgment of the circuit court.

## I.  BACKGROUND

Chastain built a house in Bedford County on a lot which lacked water and sewer service.

He intended to connect the house to water and sewer lines owned by BRWA. BRWA did not need

to install additional lines to facilitate Chastain's requested connections. Instead, provided he paid

certain fees required by BRWA, Chastain would be responsible for making the physical connections

to the water and sewer systems while BRWA would add a meter box and related items.

BRWA charged a $5,000 capital recovery fee to connect Chastain's house to its water

system, a $5,900 capital recovery fee to connect his house to its sewer system, and a $1,500 tap fee

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to add the meter box and related items. BRWA also charged Chastain application and deposit fees and a water meter fee. Chastain declined to pay these fees and attempted to make the connections anyway. As a result, BRWA charged him an additional $1,000 tampering fee. In total, BRWA required that Chastain pay $13,950 before it would permit him to connect to its systems.

On September 30, 2021, Chastain, *pro se*, filed a petition in the circuit court seeking an order that would require BRWA to "charge [him] a reasonable and just Capital Recovery fee" and "permanently change its Capital Recovery fee policy."[1] BRWA filed a demurrer on the basis that Chastain's allegations were "not factual statements," but rather him "complaining that the connection fees . . . are not 'fair and reasonable' nor . . . 'just and equitable.'" The circuit court sustained BRWA's demurrer and dismissed Chastain's petition with leave to amend.

Chastain filed an amended petition on December 10, 2021, alleging that BRWA's water and sewer connection fees were unreasonable on their face and when compared to neighboring jurisdictions. He further alleged that the fees were unequally applied because they were imposed only upon customers building or buying new homes and not those buying existing homes. Unlike his initial petition, Chastain's amended petition did not request that the circuit court determine how much he should be charged or order BRWA to change its fee policy. BRWA filed another demurrer, which the circuit court overruled.

During a bench trial, Chastain testified that the nearby towns of Rocky Mount and Altavista charged their customers $2,100 and $4,100 respectively to connect to their water and sewer systems. He also testified that Amherst County distributed the cost of necessary capital improvements amongst all its customers and alleged that "[BRWA] has chosen to impose an

---

[1] Chastain also filed a motion for immediate injunctive relief requesting that the circuit court order BRWA to connect his home to its water and sewer systems. On October 20, 2021, the circuit court granted the injunction contingent on Chastain posting a $10,000 cash bond by November 30, 2021. Chastain did not post the bond and subsequently requested that the circuit court "cancel" its injunctive relief order.

excessive fee on a small number of its customers." Chastain proposed that he should pay $3,350, which he believed to be a "fair and reasonable amount."

BRWA moved to strike at the conclusion of Chastain's evidence, and the circuit court denied the motion. Following the motion to strike, the court stated, in reference to "charg[ing] [Chastain] $14,000," that "I'm going to apply the law to the evidence as best I can, but [in] *my opinion*, that's too much money." (Emphasis added). The court then clarified that "if the locality has complied with the law, it doesn't make any difference what my opinion is. You see I'm not allowed to come in here and just rule what I think the right thing is to do and apply my personal sense of right and wrong."

BRWA then presented testimony explaining that it charged a capital recovery fee for new connections, regardless of location, to pay for the growth and replacement of its systems. BRWA also submitted its "Rate Information" policy, which reflects that BRWA calculates capital recovery fees based on the size of the new connection's meter. This calculation method corresponds to "how much flow the connection will need." BRWA further explained that it notified the public of its proposed fee structure and held a public hearing before finalizing it.

BRWA's finance director testified that its policy charging connection fees only for new connections was developed to fund new and future expansion of the water system. BRWA's executive director testified that capacity "isn't just on a given street . . . it's capacity in the entire system." The executive director also explained that BRWA had self-funded a $34,000,000 reservoir project paid for by capital recovery fees and was paying the balance of a $7,000,000 renovation of a second reservoir.

At the close of all the evidence, Chastain stated that he was not disputing "what [BRWA's] costs are and what benefits [BRWA] provides everybody." Instead, he reiterated that

"the $14,000 [BRWA] charged [him] is unreasonable"[2] and that BRWA's fee should be adjusted

"to be in line with neighboring municipalities." After considering the evidence and arguments of

the parties, the circuit court stated, "I think the reasonable argument can be made" that BRWA's

connection fee policy "becomes an invalid revenue generating device because it is unreasonable

and being unequally applied." However, the court proceeded to rule that

> [In] the final analysis, do I have a basis for determining the
> amount, and I'm saying that $14,000, I've said it before, I'll say it
> again, it's too much money for a hook up. But what is the amount
> that is reasonable? Based upon the evidence I have heard, there is
> no basis for me making such a determination.

The court then dismissed Chastain's petition, stating, "I don't think I have any alternative. . . .

I've stated my personal belief, but my personal beliefs from this bench is [sic] supposed to be

irrelevant." The court then clarified that it was dismissing Chastain's petition for "lack of

evidence." This appeal followed.

## II. ANALYSIS

Chastain argues that the circuit court erred in failing to order BRWA to amend its

connection fee policy because he presented "unchallenged evidence that [BRWA's] policy was

wrong and unreasonable." Based on the record before us, we cannot find that the circuit court erred

and, therefore, do not disturb its judgment.[3]

---

[2] We note that during oral argument before this Court, Chastain stated that he "probably would have paid the money" except that he "ran into those construction [cost] surges, you know, from COVID, and it wiped out like ten or twelve thousand dollars of my [construction] budget. So I . . . really had to strike some kind of a deal . . . there."

[3] As we hold that the circuit court did not err in not striking down BRWA's fee structure, we do not address Chastain's related assignment of error arguing that the circuit court erred by failing to compute an appropriate fee for his connection. *See Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 438 (2020) ("Following the traditional doctrine of judicial restraint, [appellate courts] 'decide cases "on the best and narrowest grounds available."'" (alteration in original) (quoting *Levick v. MacDougall*, 294 Va. 283, 302 (2017))). Similarly, we do not address Chastain's request for $50,000 in damages, which he advances for the first time on appeal. *See Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) ("The Court of

- 4 -

Code § 15.2-5102(A) authorizes "the governing bodies of two or more localities [to] . . . create a water authority" that "shall be a public body politic and corporate and a political subdivision of the Commonwealth." In turn, Code § 15.2-5136(D) provides, in pertinent part, that "[w]ater and sewer rates, fees and charges established by any [such] authority shall be fair and reasonable." The Supreme Court of Virginia has held that "setting rates and fees for sewer or water services is a nondelegable legislative function." *Town of Leesburg v. Giordano*, 280 Va. 597, 605 (2010) (quoting *City of South Boston v. Halifax Cnty.*, 247 Va. 277, 283 (1994)). "[A]s with any other legislative function, the action of [an authority] in setting . . . connection fees is afforded a presumption of validity." *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 615 (2006). "This presumption of legislative validity is a presumption of reasonableness." *Giordano*, 280 Va. at 606. As the Supreme Court has explained:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness and the [legislative action] cannot be sustained.

*Id.* (alterations in original) (quoting *Bd. of Supervisors of Fairfax Cnty. v. Robertson*, 266 Va. 525, 533 (2003)).

Assuming without deciding that Chastain introduced probative evidence of the unreasonableness of BRWA's connection fee policy, the issue before this Court is whether BRWA presented sufficient evidence to make the reasonableness of its connection fee policy fairly debatable. *Id.* "An issue is fairly debatable 'when the evidence offered in support of opposing views would lead objective and reasonable persons to reach different conclusions.'" *Id.* (quoting

---

Appeals will not consider an argument on appeal which was not presented to the trial court." (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998))).

*Bd. of Supervisors v. Williams*, 216 Va. 49, 58 (1975)).  To determine whether an issue is fairly

debatable, this Court "need only examine whether any evidence in the record is sufficiently

probative" to make it so.  *Id.* at 608.  In doing so, we are mindful that "[u]nder the fairly debatable

standard, '[t]he governing body is not required to go forward with evidence sufficient to persuade

the fact-finder of reasonableness by a preponderance of the evidence.'"  *Id.* at 606 (second alteration

in original) (quoting *Ames v. Town of Painter*, 239 Va. 343, 348 (1990)).

Chastain argues that BRWA failed to present evidence to make the reasonableness of its

fees fairly debatable and that it "offered no defense."  In support of his argument, Chastain contends

that the circuit court found BRWA's fees to be "unreasonable."  However, the circuit court made no

such finding.  As noted above, the court merely stated its "opinion" that the fees charged to Chastain

required "too much money" and clarified that if BRWA "complie[s] with the law, it doesn't make

any difference what my opinion is" based upon the court's "personal sense of right and wrong."

Further, although the court later stated that a "reasonable argument can be made" that BRWA's

connection fee policy was "unreasonable," it made clear that it was not ruling to that effect.  Instead,

the court dismissed Chastain's petition because the lack of evidence before it left it without "any

alternative" to doing so, and it reiterated that having "stated my personal belief[s]," those "personal

beliefs from this bench is [sic] supposed to be irrelevant."[4]

---

[4] In fact, the record makes clear that the circuit court dismissed Chastain's petition on grounds of lack of evidence without ever stating a clear ruling on the validity of BRWA's connection fee policy.  "It is the appellant's burden 'to obtain a clear ruling from the [circuit] court' on an issue he wishes to raise on appeal.  This burden stems from the requirement that a litigant state an objection 'with reasonable certainty at the time of the ruling.'"  *McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021) (first quoting *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019); then quoting Rule 5A:18).  Without such a ruling from the circuit court, "'there is no ruling for [this Court] to review' on appeal."  *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (alteration in original) (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993)).  Although we acknowledge that Chastain acted *pro se* throughout the proceedings in the circuit court and before this Court, a party "who represents himself is no less bound by the rules of procedure and substantive law than a [party] represented by counsel."  *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (quoting *Townes v. Commonwealth*, 234 Va. 307,

Contrary to Chastain's contention respecting BRWA's evidence and "defense," BRWA introduced evidence demonstrating that it charged connection fees for all new connections based on meter size, as well as to fund the growth and replacement of its infrastructure to sustain its entire system. BRWA's executive director provided examples of systemic infrastructure improvements, their cost, and BRWA's responsibility to pay for them. Further, Chastain specifically did not contest BRWA's costs to provide benefits to everyone connected to BRWA's systems, and, therefore, we must view these uncontested costs as accurate. Accordingly, we reject Chastain's arguments and conclude that the record contains evidence sufficiently probative to establish that the reasonableness of BRWA's connection fee policy is fairly debatable. Accordingly, we affirm the circuit court's judgment.[5]

---

319 (1987)). *See also Justus v. Commonwealth*, 222 Va. 667, 680 (1981) ("the 'right of self-representation is not . . . a license not to comply with the relevant rules of procedural and substantive law'" (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975))).

[5] The dissent would have us remand this matter to the circuit court for it to consider whether BRWA's policy violates the Equal Protection Clause of the Fourteenth Amendment, based upon a "liberal[] constru[al]" of the contents of Chastain's circuit court pleadings and brief to this Court. However, "it is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Coward v. Wellmont Health Sys., d/b/a Lonesome Pine Hosp.*, 295 Va. 351, 367 (2018) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (applying Rule 5A:20(e))); *see also Morris v. Commonwealth*, 75 Va. App. 257, 278 (2022) (Russell, J., dissenting) ("Courts are charged with answering only those questions necessary to resolve the cases brought to us by the litigants as opposed to questions we wish the litigants had raised."). This case does not require the court to resolve any constitutional claims because Chastain did not argue to the trial court that BRWA's policy violated the Equal Protection Clause of the Fourteenth Amendment. Throughout his complaint, he contends that BRWA's fees were unreasonable, but to say that a fee policy is unreasonable is not the functional equivalent of saying that the fee policy is unconstitutional. Furthermore, we note that the circuit court never ruled on any equal protection issue or argument, and thus "there is no [equal protection] ruling for us to review." *Fisher*, 16 Va. App. at 454. In addition, because Chastain did not raise the constitutional issue in his briefs on appeal, the dissent would "have [us] ignore the requirement . . . of assigning error to a judgment of the trial court to reach its desired conclusion," so as to "decide the matter on an argument that it alone crafted and champions." *Morris*, 75 Va. App. at 281; *see also* Rule 5A:20(c)(2) and (e).

- 7 -

III.  CONCLUSION

As we cannot say that the circuit court erred under these particular circumstances, we

affirm the circuit court's dismissal of Chastain's petition.[6]

*Affirmed.*

---

[6] We also note that in Chastain's amended petition, filed after the circuit court granted BRWA's demurrer with leave to amend, he did not request that the court order BRWA to change its policy or that it calculate a reasonable connection fee.  Despite arguing that the fee charged to him by BRWA was facially unreasonable and unreasonable as applied, the only relief Chastain specifically requested of the circuit court was that it "deny [BRWA's] Motion for Demurrer." "Courts can only grant relief [that is] requested," *Irwin v. Irwin*, 47 Va. App. 287, 298 n.10 (2005), and "[r]elief of any type will only be granted when a party specifically requests the relief in a pleading filed in the proper court," *Wilson v. Wilson*, 25 Va. App. 752, 761 (1997) (quoting *Hur v. DCSE ex rel. Klopp*, 13 Va. App. 54, 62 (1991)).  *See also* Rule 3:2(c)(i) (providing that in the commencement of a civil action, "[i]t is sufficient for the complaint to ask for the specific relief sought").  It is well-established in Virginia that "[a] litigant's pleadings are as essential as his proof. . . .  Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed." *Wetlands Am. Trust, Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 174 (2016) (first alteration in original) (quoting *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011)).  At trial, the circuit court expressed its concern about the insufficiency of Chastain's amended pleading, noting that it had previously been reversed when "the Supreme Court of Virginia correctly stated and ruled that the relief that I granted was outside the pleadings. . . .  To grant relief, that relief must have been properly pled. . . .  [Y]ou can't get it if you don't ask for it."  Later, when ruling from the bench, the court reiterated its concern, stating, "my main concern . . . [is] I am not allowed to grant relief if it's not properly requested.  I recognize that."  Thus, even assuming for the sake of argument that we did not resolve this appeal on the grounds discussed above, the insufficiency of Chastain's amended pleading would require us to affirm the circuit court.

Causey, J., dissenting.

Chastain's *pro se* brief, liberally construed, contests the circuit court's dismissal of his complaint and alleges that the Bedford Regional Water Authority ("BRWA") policy violates the Equal Protection Clause of the Fourteenth Amendment. Chastain's *pro se* complaint, filed in the circuit court, also raises an equal protection claim and requests that the policy be struck down as unconstitutional. Challenging the constitutionality of the policy, which, if the policy is struck down, would relieve Chastain of the obligation to pay the fees, is a valid prayer for relief. Because the circuit court did not consider the equal protection issue, I would remand the case for the circuit court to do so. Thus, I respectfully dissent from the majority's affirmance of the dismissal of Chastain's complaint.

Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Estes Funeral Home v. Adkins*, 266 Va. 297, 306 (2003) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

"A document filed *pro se* is 'to be liberally construed . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle*, 429 U.S. at 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1952)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). *Pro se* pleadings should be "interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  The "policy of liberally

construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of

self-representation is an obligation on the part of the court to make reasonable allowances *to

protect* pro se *litigants from inadvertent forfeiture of important rights*[7] because of their lack of

legal training.'"  *Id.* at 475 (alteration in original) (emphases added) (quoting *Traguth v. Zuck*,

710 F.2d 90, 95 (2d Cir. 1983)).[8]

Even if *pro se* pleadings do not mention the Fourteenth Amendment or Equal Protection

Clause, courts have interpreted such pleadings as raising equal protection claims.  If the

pleadings allege facts that the government treated the plaintiff differently than other "similarly

situated" persons, the *pro se* plaintiff has raised an equal protection claim.  *Fogle v. Pierson*, 435

F.3d 1252, 1260 (10th Cir. 2006); *see id.* at 1262 ("Fogle's supplemental brief simply recites

many of the conditions of his administrative segregation confinement without necessarily

explaining how his constitutional rights were violated.  However, liberally construing Fogle's

---

[7] Such important rights include the right to be treated equally under the law, as discussed below.  Additionally, access to water and sanitation are basic human necessities and should be made affordable for everyone.  *See Human Rights to Water and Sanitation*, UN Water, https://www.unwater.org/water-facts/human-rights-water-and-sanitation (last visited Dec. 5, 2022) ("Access to water and sanitation are recognized by the United Nations as human rights— fundamental to everyone's health, dignity and prosperity.").  Mr. Chastain and his daughter have been without running water and sanitation services for over a year.

[8] All of the cases that the majority cites in footnote 5, in which it contends that we cannot "construct a litigant's . . . arguments for him," are cases where all parties were represented by attorneys, and none of the parties proceeded *pro se*.  Further, as discussed below, Chastain did more than merely "contend[] that BRWA's fees were unreasonable."  Before this Court is a *pro se* litigant, who has specifically pled that a municipal corporation's capital recovery fee policy has been "unequally applied" to his detriment and that such policy is "facially unreasonable [just] as a law or provision can be *facially unconstitutional*."  (Emphasis added).  This amounts to an equal protection claim, which should have been considered at the trial level.  In fact, Chastain made this argument so clearly to the circuit court that the trial judge even said, "I think the reasonable argument can be made that" BRWA's capital recovery fee policy was "being unequally applied."  Accordingly, this case should be remanded so that the circuit court can consider and rule on the issue, requiring the parties' additional briefing, if needed.

*pro se* brief, we believe he is raising . . . equal protection claims related to his time in administrative segregation . . . ."); *Thomas v. Brierley*, 481 F.2d 660, 661 (3d Cir. 1973) (concluding that the trial court erred in dismissing a *pro se* plaintiff's complaint as frivolous because plaintiff's allegation that "the action by the officials [of denying the plaintiff, who was a prisoner, the privilege to visit with a friend] was merely the unwarranted result of the way . . . the officials subject the Black inmate and his family to harassment and degradation," when liberally construed, potentially raised an equal protection claim). When *pro se* plaintiffs appeal a dismissal of complaint, and the complaint raised issues at the trial level that the trial court did not consider, appellate courts have remanded for consideration of the unaddressed claims. *See Thomas*, 481 F.2d at 661 (remanding for consideration of claims properly raised); *Fogle*, 435 F.3d at 1262-63, 1265 (same).

In *Estes*, the Supreme Court of Virginia struck down a municipal ordinance that imposed different waste disposal fees based on an entity's classification for violating the Equal Protection Clause. 266 Va. at 299, 306-07. The plaintiffs in *Estes* argued that "the solid waste disposal fee levied as to each one of them was 'arbitrary' and 'made in a discriminatory manner.'" *Id.* at 300. Thus, the plaintiffs "asked the [circuit] court to declare that the [o]rdinance is 'void and of no effect' and that, therefore, the [plaintiffs] 'are under no obligation to make payment based upon an unconstitutional and void [o]rdinance.'" *Id.* at 301. In response, the municipal board explained that it classified entities "by separating types of businesses, and the rates for each classification were based on [waste] container size" and how often the containers would need to be picked up (number of "pick-ups") each week. *Id.* at 303. The rationale was that more pick-ups and larger containers should result in higher fees. *Id.* at 306.

The Court held that for an ordinance to be upheld under the Equal Protection Clause, "[t]he basis of a classification 'must have a direct relation to the purpose of the law, and must

present a distinction which renders one class, in truth, distinct or different from another class.'" *Id.* at 304 (quoting *City of Newport News v. Elizabeth City Cnty.*, 189 Va. 825, 841 (1949)). In other words, "equal protection requires only that 'the classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments not be so disparate, relative to the difference in classification, as to be wholly arbitrary.'" *Id.* (quoting *City of Portsmouth v. Citizens Tr. Co.*, 216 Va. 695, 698 (1976)). Concluding that the classifications in the ordinance were "not inherently suspect" and did not "infringe upon the exercise of a fundamental right," the Court applied the rational basis test to the ordinance. *Id.* Under the rational basis test, an ordinance's "classifications are 'permissible if the governmental objective is "legitimate" and the classification[s] bear[] a "reasonable" or "substantial" relation thereto.'" *Id.* (alterations in original).

The Court agreed with the municipal board that the "governmental objective of establishing a fair and equitable fee schedule that is based on the size of containers and the number of 'pick-ups' per week, and that reflects the current costs of solid waste disposal in Wise County," was "legitimate." *Id.* at 304-05. Yet the facts showed that the municipal board's criteria for classifying entities and assigning fees—the number of pick-ups and the size of the waste container—had no effect on what classification and resulting fee an entity received. *Id.* at 303, 306. For example, a business classified as "convenience store" with "a 0–1000 gallon container and only one 'pick-up' per week has to pay $600." *Id.* at 306. In contrast, a business classified as a "'fast food' restaurant with the same size container but with one to four 'pick-ups' per week is . . . charged a fee of $400." *Id.* Thus, the Court concluded that "the classifications set forth in the [o]rdinance and [fee schedule were] not based on distinctions that render 'one class, in truth, distinct or different from another class.'" *Id.* Therefore, the classifications in the

ordinance were unreasonable, and the "unreasonableness not only [wa]s apparent on the face of the [o]rdinance but also was clearly shown by extrinsic evidence." *Id.* Accordingly, the ordinance failed the rational basis test and violated the Equal Protection Clause. *Id.* at 304. Thus, the Court held that the ordinance was unconstitutional, and the plaintiffs were relieved of paying any fees under the ordinance. *Id.* at 301, 307.

Here, Chastain's brief[9] to this Court, liberally construed, contests the dismissal of his complaint and raises an equal protection challenge to BRWA's policy. He alleges that the policy is "unreasonable" because "[BRWA] does not charge any of its 15,000 customers to maintain the water system they all use, wear out and benefit from every day"; instead, it "*imposes all that cost on 'the new people* hooking up to'" the system. (Emphasis added). He also restates the arguments he made to the circuit court that the policy was "being unequally applied" and the fee was "not equitable." Thus, like the plaintiffs in *Estes*, he alleges that the policy imposes arbitrary fees in a discriminatory manner. Such statements are enough to raise an equal protection claim.

Chastain's "Amended Complaint" filed in the circuit court also raised an equal protection challenge to the policy. And, like the plaintiffs in *Estes*, Chastain requested a proper prayer for relief from the circuit court—that the policy be found unconstitutional and thus, invalidated. The complaint stated that "[o]ne presumes a utility fee can be just as *facially unreasonable* as a law or provision can be *facially unconstitutional*." (Emphases added). This statement makes a facial constitutional challenge to BRWA's policy. Generally, implicit in a constitutional challenge to a policy is a request that the policy be invalidated, so challenging the constitutionality of a law or policy is a proper request for relief. *See Tanner v. City of Virginia*

___

[9] I rely on Chastain's original brief submitted to this Court, not the amended brief, to address any concerns BRWA has related to the alleged untimely filing of the amended brief.

- 13 -

*Beach*, 277 Va. 432, 436, 438, 442 (2009) (granting relief to the plaintiffs by striking down the municipal ordinance when the plaintiffs challenged the constitutionality of the ordinance); *Jaynes v. Commonwealth*, 276 Va. 443, 450, 464 (2008) (invalidating statute and vacating the defendant's conviction under the statute when defendant challenged the constitutionality of the statute). In support of this constitutional challenge, Chastain alleged that BRWA's "excessive [capital recovery] fee policy (for new service), *is . . . unequally applied* in *that it is only imposed upon those residents building or buying a new home*. It is not imposed upon any customer buying an existing home . . . ." (Emphases added). Thus, like the plaintiffs in *Estes*, Chastain alleges that fees were arbitrary and levied in a discriminatory manner, in violation of the Fourteenth Amendment. This issue was properly raised in the circuit court. The circuit court even recognized that Chastain was arguing that the policy was unequally applied, stating, "I think the reasonable argument can be made" that BRWA's capital recovery fee policy "becomes an invalid revenue generating device because it is unreasonable and *being unequally applied*." (Emphasis added). Further, although a constitutional challenge implies a request for invalidation of the challenged policy, Chastain specifically requests that a new policy that collects capital recovery fees from all customers be enacted in place of the old policy, and thus necessarily argues that the old policy be invalidated. Chastain, after arguing that BRWA's current policy is unconstitutional, argues that since all BRWA customers benefit from maintenance of BRWA's systems,[10] "'capital recovery fees' should be collected . . . from all of [BRWA]'s 15,000 customers at a reasonable and affordable rate."

Chastain's pleadings, liberally construed, raise an equal protection claim and make a proper prayer for relief. Because the circuit court did not consider this issue, I would remand

---

[10] BRWA's policy states that "Capital recovery charges . . . will be used for funding expansion and *replacement of system infrastructure* or adding to [BRWA] reserves." (Emphasis added).

this case for the circuit court to consider, under the criteria set out in *Estes*, whether BRWA's policy violates the Equal Protection Clause. The circuit court "should . . . require the filing of . . . a responsive pleading to the [Amended] Complaint" on the equal protection issue before making its ruling. *Thomas*, 481 F.2d at 661. If the circuit court finds an equal protection violation, it may grant Chastain relief by striking down the policy as unconstitutional and release Chastain from the obligation to pay the capital recovery fees, as the Court did in *Estes*.

For the reasons stated above, I respectfully dissent.